**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

GLENN RAGLON

Plaintiff.

Case No. _10-CV-2479 EFM/GLR_

**JURY TRIAL DEMANDED**

Vs.

UNITED PARCEL SERVICE, INC.,

Defendant.

### PLAINTIFF'S COMPLAINT

COMES NOW Plaintiff Mr. Glenn Raglon, ("Plaintiff" or "Mr. Raglon"), via pro-se, hereby files his complaint against Defendant United Parcel Service, Inc. ("Defendant," "UPS" or "the Company") states and alleges as follows:

## NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS

1.

Plaintiff, Glenn Raglon , brings this action against Defendant, UPS., for discriminatory, retaliatory, violations of Americans with Disability Act, (ADA), and other unlawful conduct in employment pursuant to and unlawful conduct in employment pursuant to Title VII of the Civil Rights Act pf 1964, as amended, 42 U.S.C. §§ 2000e et seq (Title VII), Americans With Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); (a) failing to engage in good faith and assisting Mr. Raglon in identifying reasonable accommodation for Mr. Raglon during his tenure of employment while he was disabled; (b) failing and/or refusing to provide reasonable accommodations for Mr. Raglon disability, (b) failing and refusing to reinstate Mr. Raglon, an otherwise qualified disabled employee, to a position that would effectively accommodate his medical Restriction & related impairments without imposing an undue hardship on UPS.

(c) retaliating against Mr. Raglon for filing internal complaints; (d) flagrantly breaching the non-retaliation and other agreement and promises; (e) , engaging in various forms of related unlawful retaliation, interference, harassment, intimidation, and coercion, including, but, not limited to;

(f) Failing and refusing to permit Mr. Raglon and interfering with his attempts to return to work in response to his having exercised his rights to seek workers compensation and the protections of the ADA and related laws.

2.

The Rehab Act requires Defendant to engage in an interactive process with its employees to identify and agree upon either: 1) a reasonable accommodation to allow the employee to return to productive employment while performing the essential functions of his or her former job; or, 2) another vacant position. The Company's policy requires it to violate its duty to persons seeking accommodations which is to engage in the interactive process required under the ADA and the Rehab Act. UPS is required by law to engage in the interactive process in order to identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations.

3.

The Company does not have a practice of providing employees absent from work due to an injury with other work as a required accommodation; at most, on a case by case basis, UPS provides temporary light duty work only to those individuals who have an estimated return to full duty date within thirty (30) days. UPS policy denies effective accommodations, both to individuals whose disabilities are chronic or long-term, as well as to those individuals whose impairments UPS perceives as likely to be chronic or long-term. When the Company has information sufficient to put it on notice that the employee might have a long-term or chronic disability, by policy, it does not engage in the required interactive process. Instead, UPS uniformly asks the employee to have a physician complete a written report and to have the doctor submit the completed form directly to UPS.

2

4.

Next, UPS employees review the form, and on the basis of the content of the form, UPS makes a decision as to whether it believes the individual requesting the accommodation is a .qualified individual with a disability. as a matter of law, without ever questioning the meaning of the content of the form, and without any communication directly with the individual on whose behalf the accommodation request was made

5.

Defendant has a codified practice for processing requests for accommodation in order to return to work, which when applied as written, constitutes a *per se* violation of the Defendant's duty to engage with the employee, such as Mr. Raglon, in the good faith interactive process to identify reasonable accommodations under the ADA.

6.

The Company also has a policy or practice of refusing to reinstate individuals, regardless of their present disability status (i.e., whether the person is or ever was a qualified individual with a disability under the law and/or whether the person requests or requires any accommodation), in retaliation for exercising their rights under the ADA, as well as state workers. compensation law.

7.

Defendant has interfered with, retaliated against, and engaged in other types of unlawful harassment and intimidation in connection with Mr. Raglon accommodation requests and related workers. compensation claim

3

8

UPS is one of the largest private employers in the United States with revenues in excess of $50 billion for its last fiscal year; it is also one of the world's largest private mail carriers with over 400,000 employees. When a UPS employee, such as Plaintiff, attempts to return to work following an accident or a medical leave of absence and notifies the Company of such intention, UPS requires as a routine policy and practice that such employee obtain a full 100% medical release prior to any reinstatement with the Company.

9.

UPS does in fact have positions available within the Company which could accommodate Mr. Raglon and others like him. In the absence of the submission of a full medical release, medically restricted employees may be allowed to temporarily work in the Company's light-duty. (.TAW.) program, which is less physically challenging and may comport with their restrictions and capabilities. However, the TAW program is only rehabilitative in nature and, in fact, injured and medically restricted employees who have a limited prospect of full recovery (i.e., those whose restrictions are expected to persist for more than thirty (30) days) are ineligible to participate in the TAW program

10.

UPS not only denies permanently disabled employees engagement in the interactive process to determine a reasonable accommodation for them as mandated under the ADA, but, as a *de facto* policy, pattern and practice, denies permanently disabled and/or permanently restricted employees access to other less physically demanding work on a permanent basis within the Company. This policy, pattern and practice of non-interaction, bad faith, non-accommodation and retaliation and interference by UPS on the basis of disability status constitutes a *per se* violation of the ADA.

4

11.

UPS arbitrarily and unilaterally denominates such permanently disabled employees who attempt to return to work from medical leave without a full medical release as .inactive. employees, as a pretext for violating their rights, and routinely refuses to engage them in the interactive process and denies them reasonable accommodations in violation of the ADA

12.

Plaintiff alleges that he filed a claim for workers compensation benefits after sustaining an injury arising out of and during the course of his work with UPS; UPS had knowledge of this injury and Mr. Raglon related claim; UPS constructively or effectively, if not outright, placed Mr. Raglon employment; on inactive status to avoid the ongoing discriminatory pattern of practice that exist at UPS and, there is a causal connection between the protected activity, injury and the direct retaliation by UPS.

## PARTIES

Plaintiff, Mr. Glenn Raglon, is a 54 (fifty-four) year old male and a citizen and resident of Harris County, Texas. Plaintiff was hired by UPS in or around March 14, 2008, and, up to and until the time of the unlawful acts, conduct, and practices at issue, was continuously employed by the Company at its Lenexa, Kansas facility.

Defendant, UPS, is a Delaware corporation, having corporate headquarters located at 55 Glenlake Parkway, NE, Atlanta, Georgia 30328. UPS is the world's largest private mail carrier with hundreds of thousands of employees worldwide and is one of the largest private employers in the United States. Defendant generated revenues in excess of $50 billion for 2009. At all relevant times, UPS has continuously been an employer, a person, and a covered entity

5

Defendant is a federal contractor doing business with the United States government. By virtue of this status, UPS is required to comply with the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701 *et seq.* (the .Rehab Act.), to correct unlawful employment practices on the basis of disability, including the statutory mandate to provide reasonable accommodations to individuals with disabilities. At all times relevant to the factual claims which form the basis for this suit, Defendant has been subject to the requirements of the Rehab Act.

## JURISDICTION AND VENUE

This Court has jurisdiction over the federal question subject matter of this civil rights action, pursuant to 28 U.S.C. §§ 1331 and 1343.

This Court has pendent or supplemental jurisdiction over the state law claim raised herein, pursuant to 28 U.S.C. § 1367.

This Court has jurisdiction over all the claims herein, pursuant to 28 U.S.C. § 1332 (a).

This Court has personal jurisdiction over Defendant because the Company systematically and continuously engages in substantial interstate commercial conduct and business activity in Kansas, and the case arises out of UPS.s unlawful conduct within this State.

Plaintiff has complied with all conditions precedent to filing suit under the ADA. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (.EEOC.), on or about March 9, 2010 and later received Right to Sue from EEOC dated June 2, 2010, charge number 563-2010-00435.

13.

This complaint is filed within 90 days of receipt, the right to sue notice.
See number ___15___.

14.

Venue is proper in the United States District Court for the District of
Kansas pursuant to 28 U.S.C. §§ 1391(b) and (c). The unlawful employment
practices set forth herein occurred and continue to occur in and around  Lenexa
County, Kansas,  where Plaintiff worked, where the discrimination and the
damages occurred, and where the unlawful employment policies and practices
remain in effect in continuous, systemic violation of said statutes and law.

## FACTUAL STATEMENT AND ALLEGATIONS

15.

On May 8, 2008, the Plaintiff Glenn E. Raglon, met with personal injury
by accident arising out of and in the course of his employment with United Parcel
Service. A box containing metal shelving units came down and struck his right
hand.

16.

Plaintiff was employed with UPS as a part time loader working at the
Lenexa, Kansas facility.

17.

In connection with this injury, Mr. Raglon properly filed an injury report;
however, thereafter, he continued to work part-time *for UPS.*

18.

On May 8, 2008, Mr. Raglon work related injury was not properly reported
by his former supervisor Neil Schmitt, who actually witnessed the on the job
related injury. Later UPS reprimanded Mr. Schmitt for failure to report the on the
job related injury.

7

19.

On the date of his work related injury on or about May 8, 2008, Mr. Raglon was informed to get back to work and no injury report was documented or medical aide render on the actual date & time of the injury, not until the next working shift upon Plaintiff return to work.

20.

Mr. Raglon personally witnessed a white female employee working on the Red Belt render medical attention on the same date and time period during the month of July 2008, and immediately a supervisor name Bridgett called the Safety Manager and the white female was given medical attention on the same date of the injury. Plaintiff was denied such medical aide at the time of his injury.

21.

Later that year, on or about October 30, 2008, Dr. E Toby, a physician approved by UPS and its workers compensation insurer, Gallagher Bassett, claimed Mr. Raglon had reached MMI and placed permanent physical restrictions on Mr. Raglon. See Number __*16*__.

22.

As a result of his work-related injury and related impairments, Mr. Raglon is substantially limited in engaging in or performing a number of major life activities, including: certain manual tasks, sleeping, walking, *lifting*, concentrating, and working.

23.

Mr. Raglon is otherwise qualified for and could and can perform his last Job, or work in small sort and/or other jobs at UPS with or without a reasonable accommodation.

24.

A reasonable accommodation, include working in the small sort area of UPS to accommodate his permanent medical restrictions assigned by Dr. E. Toby medical report. See UPS job description- number __*17*__.

8

25.

Since Mr. Raglon sustained his related injury and with his attempts to return to work and seek a reasonable accommodation, Defendant has engaged in a deliberate, concerted, and ongoing effort specifically designed to force Mr.Raglon to resign (part of a policy, pattern and practice engaged in by UPS in an attempt to avoid the appearance of unlawfully terminating employees in this situation) and engaged in variety of flagrant and subtle forms of unlawful discrimination, retaliation, interference, and harassment, including, but not limited to, certain of that described herein

26.

UPS refused to communicate with Mr. Raglon with respect to his attempts to return to work and in other related situations.

27.

UPS has written policies and codes wherein the Company claims to prohibit the unlawful discrimination and retaliation Mr. Raglon has been subjected to.

28.

The UPS Code of Business Conduct requires its employees to report certain types of conduct which they believe in good faith to be improper or unlawful.

29.

The UPS Code of Business Conduct expressly states that UPS will not retaliate against an employee making any such report and any such retaliation is prohibited and grounds for termination.

30.

Mr. Raglon and all UPS employees are obligated to comply with and have agreed to be bound by the terms, conditions, and promises in these codes and policies.

31.

UPS is obligated to comply with and has agreed to be bound these codes and policies.

9

32.

Mr. Raglon relied to his great detriment on the reporting and related non-retaliation provisions within these UPS codes and policies in making his reports.

33.

UPS has failed to provide Mr. Raglon with any lawful or legitimate reason for the discriminatory and retaliatory conduct he has been subjected to by UPS.

34.

UPS publicly publishes and provides to its employees, such as Mr. Raglon, written employee policies and codes, including a Code of Business Conduct, which contain terms and conditions therein that both UPS and its employees agree to and are bound by, including, in particular, that UPS employees, such as Mr. Raglon are encouraged, if not required, to report conduct which they reasonably and in good faith believe to be unsafe, unethical, unlawful, and/or otherwise improper; and, any employee making any such report, such as Mr. Raglon, will not be retaliated against by UPS and/or any of its employees.

35.

Mutual consideration is provided for such through Mr. Raglon related employment services, promise, and the related reports he made and Defendant's employment of Mr. Raglon and promise of non-retaliation with respect to any related reports;

36.

Mr. Raglon performance or willingness to perform in compliance with this contract and promise is demonstrated through his acceptance of employment and related services and the reports he made.

37.

After making these complaints, UPS breached this contract and promise by discriminating and retaliating against and engaging in unlawful harassment, intimidation, interference and other improper acts, conduct, and practices against or towards Mr. Raglon.

10

38.

During notification to the Court within his workers compensation, Mr. Raglon gave notice to the State of Kansas workers compensation that he feared for the safety and concern of himself and his family due to UPS ongoing cover up and direct evidence relating to racism, discrimination, retaliation and cover up to avoid the third party liability of one of UPS largest customer Wal-Mart package that busted open and cause damage to his hand.

39.

The undisputed direct evidence that Mr. Raglon filed an internal complaint dated September 8, 2008 via UPS fax number 913-541-3705.
See number   Z 1  .

40.

Upon Mr. Raglon filing the internal complaint dated September 8, 2008, the company retaliated against him by withholding his workers compensation checks, failed to communicate with him about his complaint, and UPS District Case Management Supervisor Jeanne Meier provided the internal complaint letter to Gallagher Bassett, UPS insurance carrier within his workers compensation claim, and was retaliated by willfully, recklessly lying about his checks being sent. The emails dated 09/08/08 thru 09/09/08 are undisputed evidence. See number  Z 3, 1.

41.

The workers compensation claim check was not dated until September 23, 2008, 14 days later after Jeanne Meier stated in her email to Mr. Raglon that "*she confirmed with your adjustor at Gallagher Bassett that your check has been sent*" dated September 9, 2008@ 8:39 am. See number   Z 3, Z 6  .

42.

UPS further discriminated and retaliated against Mr. Raglon, for filing internal complaint and workers compensation claim by not providing the ADA (Americans Disability Act) package that he was promised by the companies District Case Management Supervisor Jeanne Meier on or about 24th of September 2008. During that conversation Jeanne Meier stated the following

"*Bottom line too Glenn our objective is to get you back to work as soon as possible, and based on the note I received from Dr. Toby and his visit with you. It that the reason why they want to do the function capacity exam is to determine if you can do the essential job functions-that functional capacity examination will tell that and I'm sure he Dr. Toby explained that much better than I can.*

*Is that if you pass the functional capacity exam than you will have your regular duty release and come back to work and again start receiving your normal compensation from UPS. And unfortunately if you're not able to do the functional capacity exam with the needed essential job functions that's needed for the job-obviously from a safety standpoint-if you can't meet those-than they would place permanent restrictions on you and at that point we would have to offer you ADA package-the American Disabilities Association if you're not able to come back to your job at UPS*" *See* number ___Z 4___.

### 43.

Mr. Raglon has sustained damages as a direct and proximate result of UPS breach of contract or its promise.

### 44.

Mr. Raglon later discovered that representatives and counsel hired by UPS provided false and misleading information to the EEOC & Kansas Human Rights Commission in direct retaliation for exercising his protected rights under federal law.

### 45.

Mr. Raglon sent a certified letter number 7007 149000489139350 to UPS requesting the ADA package, and the company has refused to communicate with Plaintiff about the Americans with Disability Association Package that was promised by UPS district case management supervisor Jeanne Meier. See number ___25___.

46.

UPS intended or should have known that Mr. Raglon would act to his detriment in reliance upon UPS promise of non-retaliation.

47.

Mr. Raglon did indeed rely on that promise to his detriment.

48.

UPS has on more than one occasion attempted to force Mr. Raglon into settling his related workers compensation claim and proceedings conditioned upon his resigning and providing the Company with a global waiver and release.

49.

UPS has refused to engage in the required interactive process and/or to do so in good faith with Mr. Raglon in response to his repeated requests for an accommodation; thereby, Defendant has refused to properly consider the actual nature and extent of Mr. Raglon disability and related impairments and whether or not a reasonable accommodation is available and/or could be provided to him.

50.

This and other conduct by UPS taken against Mr. Raglon has been and is being subjected to is prohibited by the ADA, the Rehab Act, Kansas law, constitutes unlawful discrimination, retaliation, interference, coercion, intimidation, as well as unlawful workers. compensation retaliation in violation of Federal Civil Rights laws and public policy.

51.

UPS is fully aware the discriminatory and retaliatory acts, conduct, and practices Mr. Raglon has been subjected to be unlawful. The unlawful manner and fashion in which Mr. Raglon has been and is being treated by UPS is deliberate, intentional, and outrageous, carried out willfully, wantonly, and maliciously, ongoing and continuing in nature, and is part of an unlawful UPS corporate-wide policy, pattern, and practice demonstrating malice and reckless indifference towards Mr. Raglon and others like his and/or similarly situated and

13

warrants an award of punitive damages in a reasonable sum to be determined by a jury.

52.

The claims and allegations made herein are based on law, rules, and regulations concerning rights and protections independent of any labor law, collective bargaining agreement, and/or any related grievance mechanisms or procedures.

53.

In addition to being unlawfully subjected to and forced to endure great anxiety and emotional distress, among other things, as a direct result of Defendant's unlawful acts, conduct, and practices set forth in part herein, Mr. Raglon has been unlawfully refused the ability to return to work, in any capacity; and, as such, he has been unlawfully denied substantial past and future pay and related benefits and made to suffer a variety of other attendant damages.

## Count I

### First Claim
### Prohibited Discrimination in Violation
### of the Americans with Disabilities Act of 1990 (.ADA.),
### as amended, 42 U.S.C. §§ 12101 et seq.

54.

Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55.

Mr. Raglon is a disabled person as defined by the ADA.

56.

Mr. Raglon is qualified, with or without reasonable accommodation, to perform the essential functions her last job and other jobs at UPS.

57.

Defendant discriminated against Mr. Raglon because of his disability.

14

58.

As a result of the unlawful acts and conduct of Defendant UPS, as described in part herein, by and through and in concert with its individual managers and other employees plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys. fees, the exact amount of which will be determined at trial. Plaintiff through this cause of action seeks damages in excess of $75,000.00.

### Count II

### SECOND CLAIM:
### Prohibited Retaliation in Violation of the ADA,
### as amended, 42 U.S.C. § 12203 (a)

59.

Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

60.

Mr. Raglon engaged in protected activity under the ADA.

61.

Mr. Raglon suffered an adverse employment action.

62.

There is a causal connection between Mr. Raglon protected activity and the adverse employment action.

63.

As a result of the unlawful acts and conduct of Defendant UPS, as described in part herein, by and through and in concert with its individual managers and other employees, plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys. fees, the exact amount of which will be determined at trial. Plaintiff through this cause of action seeks damages in excess of $75,000.00.

## Count III

### THIRD CLAIM:
### Prohibited Interference, Coercion, and Intimidation in
### Violation of ADA, as amended, 42 U.S.C. § 12203 (b)

64.

Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65.

Mr. Raglon engaged in protected activity under the ADA.

66.

UPS interfered with, coerced, threatened, or intimidated Ms. Anderson.

67.

There is a causal connection between Mr. Raglon protected activity and UPS interfering with, coercing, threatening, or intimidating Mr. Raglon.

68.

As a result of the unlawful acts and conduct of Defendant UPS, as described in part herein, by and through and in concert with its individual managers and other employees, plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys. fees, the exact amount of which will be determined at trial. Plaintiff through this cause of action seeks damages in excess of $75,000.00.

## Count IV

### Fourth Claim:
### Prohibited Interference, Racial Profiling, Discrimination, and Retaliatory
### Action in Violation of Title VII of the Civil Rights Act of 1964, as amended,
### 42 U.S.C. §§ 2000e et seq (Title VII)

69.

Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

16

70.

Mr. Raglon engaged in protected activity under Title VII of the Civil Rights Act as amended, §§ 2000e et seq (Title VII)

71.

There is a causal connection between Mr. Raglon protected activity and UPS interfering with, coercing, threatening, retaliation, racial profiling internal complaint or intimidating Mr. Raglon.

72.

As a result of the unlawful acts and conduct of Defendant UPS, as described in part herein, by and through and in concert with its individual managers and other employees, plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys. fees, the exact amount of which will be determined at trial. Plaintiff through this cause of action seeks damages in excess of $75,000.00.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

1) A permanent injunction be granted enjoining Defendant, its officers, directors, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA , Title VII of Civil Rights Act as amended and related laws.

2) Defendant be ordered to institute and implement, and individual members of Defendant attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities for persons with present, past, or perceived disabilities;

17

3) Defendant be ordered to make Plaintiff whole by providing appropriate back and front pay and benefits with prejudgment interest, in amounts to be proved at trial;

4) Defendant be ordered to remove and expunge, or cause to be removed or expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record(s) of employment;

5) Plaintiff be awarded extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to the Federal Rules of Civil Procedure;

6) Plaintiff be awarded all restitution and/or remedial relief;

7) Plaintiff be awarded pre-judgment interest and post-judgment interest, as well as her reasonable attorneys if such is hired. fees, expert witness fees and other costs; and,

8) Plaintiff be awarded such other legal and equitable relief as the Court deems appropriate and just.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Plaintiff hereby requests and demands a trial by jury on all issues so triable.

## DESIGNATED PLACE OF TRIAL

Plaintiff, pro-se hereby designates the United States District Court for the District of Kansas at Kansas City as the place of trial.

Dated: August 27, 2010.

Respectfully submitted,

By: 

Glenn E. Raglon- Pro-se Plaintiff
P.O. Box 671404
Houston, Texas 77267

Glennkc50@yahoo.com *email*

19

EEOC Form 161 (11/09)

**RECEIVED JUN - 7 2010**

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:   Glenn E. Raglon, Sr.
      P.O.Box 671404
      Houston, TX 77267

From:   **Kansas City Area Office**
        **Gateway Tower II**
        **400 State Avenue**
        **Kansas City, KS 66101**

☐   *On behalf of person(s) aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **563-2010-00435** | **Anna Wise,** Investigator | **(913) 551-5849** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Billie Ashton*                    06/02/10

**Billie I. Ashton,**              *(Date Mailed)*
**Director**

Enclosures(s)

cc:   **UPS**
      **14650 Santa Fe Trail**
      **Lenexa, KS 66215**

      **Melody L. Nashan**
      **Armstrong Teasdale LLP**
      **2345 Grand Boulevard Suite 2000**
      **Kansas City, MO 64108**

#15

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **Amended**<br>**563-2010-00435** |

| **Kansas Human Rights Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | |
|---|---|---|
| **Mr. Glenn E. Raglon, Sr.** | **(281) 872-1244** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **P.O.Box 671404, Houston, TX 77267** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **UPS** | **500 or More** | **(913) 541-3788** |

| Street Address | City, State and ZIP Code |
|---|---|
| **14650 Santa Fe Trail, Lenexa, KS 66215** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

| | |
|---|---|
| ☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☒ RETALIATION  ☒ AGE  ☒ DISABILITY  ☒ OTHER *(Specify below.)* | DATE(S) DISCRIMINATION TOOK PLACE<br>Earliest: **06-15-2009**  Latest: **12-01-2009**<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

Charging Party Glenn Raglon, Sr filed a previous charge of discrimination against United Parcel Services 28D-2009-00399. During the investigation of the charge – charging party discovered the following listed below.

1) UPS and its assigned representatives within the workers compensation case engaged in willful retaliatory misconduct.

2) UPS and its assigned representatives filed misleading statements to Kansas Human Rights Commission between May 2009 thru August 2009. This willful retaliatory-discrimination misconduct with the intent to cause harm to charging party.

3) UPS and its assigned representatives retaliated against charging party by withholding weekly workers compensation payments. Charging filed complaint with Federal Agency.

4) Charging Party Glenn Raglon, Sr filed internal complaint of racial profiling/discrimination/retaliatory against UPS and its assigned representatives-upon filing such complaint UPS denied ADA accommodation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| 3/9/10<br>Date          Charging Party Signature | |

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA | Amended |
| | ☒ EEOC | 563-2010-00435 |

| **Kansas Human Rights Commission** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

THE PARTICULARS ARE *(if additional paper is needed, attach extra sheet(s)):*

5) UPS and its assigned representatives knowingly engaged in an act, practice, including the making of untrue statement of material facts within the Kansas Human Rights investigation that operated fraud and deceit upon charging party.

6) UPS discriminated against charging party Glenn Raglon, Sr by not allowing charging party return to work, based on age, race, and ADA complaint filed by charging party

7) Charging party employment was terminated on or about August 1, 2009 based on charging party filing ADA violations, internal complaint, and charges of discrimination against UPS.

**The amendment includes the additional information below:**

8) UPS and its assigned representatives discriminated against employee Raglon, with racial profiling for filing internal complaint.

9) UPS and its assigned representatives continue discriminated and retaliated against employee Raglon during the timeframe of September 23, 2009 and ongoing with malicious racial profiling cover up and investigation of Terri Winslow, Jeanne Meier, Gallagher Bassett withholding of worker compensation payments.

10) UPS and its assigned representatives ongoing racist action after employee Raglon filed written complaint and provided information about racial profiling to its representatives at KU MedWest during the month of September 2009.

11) UPS and its assigned representatives have engaged in racial profiling, discrimination, and retaliation by trying to cover up the ongoing unlawful conduct.

12) UPS has discriminated and refused to accommodate employee return to work, based on direct evidence from its assigned Dr. E. Toby.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 3/9/10 Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

11/04/2008  11:39   8162466137                    JANET TORLINA

# KU ORTHOPEDICS AND SPORTS MEDICINE
### The University of Kansas

E. Bruce Toby, M.D.
Professor & Fellow/Residing Chair
Hand & Upper Extremity
Microsurgery

Federico Adler, M.D.
Clinical Professor

Marc A. Asher, M.D.
University Distinguished Professor

Douglas C. Burton, M.D.
Pediatric & Adult Spinal Disorders

Archie A. Heddings, M.D.
Orthopedic Trauma

Kelly J. Hendricks, M.D.
Adult Reconstruction

Greg A. Horton, M.D.
Foot & Ankle Surgery
Adult Reconstruction

R. Sean Jackson, M.D.
Pediatric & Adult Spinal Disorders

Vincent E. Key, M.D.
Sports Medicine, Arthroscopy &
Knee Reconstruction

Stephen W. Menone, M.D.
Sports Medicine, Arthroscopy &
Knee Reconstruction

Joseph B. Noland, M.D.
Sports Medicine

John M. Sojka, M.D.
Orthopedic Trauma

Kimberly J. Templeton, M.D.
Program Director
Musculoskeletal Oncology

Brian R. Duncan, M.D.
Chief, Orthopedic Department
KCVA Medical Center

Terrence E. McIff, Ph.D.
Neff-Wiebe Endowed Chair of
Orthopedic Biomechanics

H. Clarke Anderson, M.D.
Harrington Research Professor

Jinxi Wang, M.D., Ph.D.
Molecular Orthopedics

Fredrick W. Reckling, M.D.
Professor & Chairman Emeritus

Amy Hall, PA-C
R. Trey Stucker, PA-C

Jan Brunka, C-TAGME
Residency Program Coordinator

Debra Seyfried, CPC, CMPE
Operations/Administration Manager

October 30, 2008

Re:        Raglon, Glenn
DOI:       05/08/2008
Claim #    011645186946WC01
KUMC#      0820784

To Whom It May Concern:

Mr. Glenn Raglon has the following work restrictions. He is able to lift up to 52 pounds from floor to waist, 35 pounds from waist to shoulders, and carry 37 pounds. He is restricted to a single hand carry of 25 pounds with his right hand. Frequently though he can only lift 20 pounds with both upper extremities and on a constant basis can only lift up to 10 pounds. I hope you find this helpful.

Sincerely,

E. Bruce Toby, MD
Department of Orthopedic Surgery

EBT/kp

#16

MS 3017, 3901 Rainbow Blvd, Kansas City, KS 66160
Phone – 913-588-6100 / Fax – 913-588-8186

September 8, 2008                    Fax To: 913-541-3705

United Parcel Service
Jeanne Meir
Occupational Health Manager
14650 Santa Fe Trail Drive
Lenexa, KS 66215-2017

Subject: Complaint Information KU Med West
         Terri Winslow & Gallagher Insurance Dishonesty

Dear Mrs. Meir,

This is my follow up letter regarding the ongoing retaliation/rudeness with KU
Med West employee Terri Winslow. I have been in management for over 15
years, and find her actions unacceptable.

Let me address several issues below, it took three weeks to make an
appointment with Dr. Toby, who is located in the same building, same pod, same
office within 10 feet of Dr. Cheng.

I will not continue to wait 30 minutes for Dr. Toby or any other doctor to see me,
my time is very valuable. Some of the same questions that I was being asked by
Winslow were located in my chart, if she would have taken the time to review the
chart prior to my arrival, this would not be an issue.

In fact, Winslow rightfully owes me an apology, and if such action is not taken, I
will inform UPS-Atlanta. The message that she left on my answering machine
was rude, and I will not tolerate such behavior.

Also, I have faxed you over a copy of Gallagher website information, and your
claims adjustor has been dishonest, no check has been issued. Would you
please investigate this issue, and have last week, and this week's check shipped
overnight by Friday, September 12, 2008.

Respectfully Submitted,

Glenn E Raglon, Sr.

21

Check Issue Follow Up - Yahoo! Mail



**Check Issue Follow Up**                                    Wednesday, September 10, 2008 11:23 AM

From: "G Rag" <glennkc50@yahoo.com>
  To: jmeier@ups.com
    2 Files (3182KB)

  

UPS clai...   UPS Pay ...

Jeanne,

I have attached insurance carrier website document in order to provide factual
information, that adjuster has been dishonest.
The following checks will need to be issued..week 08/29/ -09/04, 09/05 - 09/11,
would you please have the checks issued by overnight carrier by Friday, Sept 12,2008.

Thanks

Glenn Raglon,Sr.



Thanks, Jeanne.
As soon as the appt with Dr. Toby is re-scheduled, I will contact Keith's
office and advise them of both appointments.

Kathy Salgado
Senior Claim Representative
Gallagher Bassett Services - UPS
P.O. Box 4000
Schaumburg, Illinois 60168
Toll Free: (866) 836-4719 ext. 515
Direct: (847) 273-3976   Fax: (866) 905-4998

<jmeier@ups.com>

09/09/2008 12:13 PM

To
<Kathleen_Salgado@gbtpa.com>

cc

Subject
Glen Region Appt's

Kathy, below is the response I sent to Glenn this morning regarding his appt.
Rob spoke with his attorney today and they would like all appt information
to go to their office and they will make sure that Glenn knows when and
where to be. Rob also advised them that Dr Toby's office will not tolerate
any more issues from him and would refuse him treatment if it happens again.
If you can please notify Keith Mark's office of the EMG appt and when we get him
rescheduled with Dr Toby I would appreciate it.

Thanks, Jeanne

**From:** MEIER JEANNE (NEB5JMM)
**Sent:** Tuesday, September 09, 2008 8:39 AM
**To:** 'glennkc50@yahoo.com'
**Subject:** Gallagher Intervention-Check Issue Problem

Glenn, Dr Toby would like you to see Dr George Varghese at KU Medical
Center located at 3901 Rainbow Blvd in Kansas City, Kansas for this last EMG.
Also I have confirmed with your adjuster
Gallagher Bassett that your check has been sent.

Jeanne Meier

**From:** G Rag [mailto:glennkc50@yahoo.com]
**Sent:** Tuesday, September 09, 2008 8:03 AM
**To:** MEIER JEANNE (NEB5JMM)

Jeanne,

Thanks..because I don't know why they changed it to this Vaghese !!

Glenn

--- On **Tue, 9/9/08, jmeier@ups.com** *<jmeier@ups.com>* wrote:
From: jmeier@ups.com <jmeier@ups.com>
Subject: Gallagher Intervention-Check Issue Problem
To: glennkc50@yahoo.com
Date: Tuesday, September 9, 2008, 8:13 AM

Glenn, I will have to contact the Nurse Case Manager this morning and verify
where the EMG is scheduled for. I will let you know as soon as I find out.

Jeanne Meier


**From:** G Rag [mailto:glennkc50@yahoo.com]
**Sent:** Monday, September 08, 2008 4:23 PM
**To:** MEIER JEANNE (NEB5JMM)
**Subject:** Re: Gallagher Intervention-Check Issue Problem


Jeanne,
    When I left the KU Med West .. I was told Dr. Fishman, would be the
    office for EMG, this Varghese is new to me...Terry Winslow is being dishonest...

    --- On **Mon, 9/8/08, jmeier@ups.com** *<jmeier@ups.com>* wrote:
    From: jmeier@ups.com <jmeicr@ups.com>
    Subject: Gallagher Intervention-Check Issue Problem
    To: glennkc50@yahoo.com
    Date: Monday, September 8, 2008, 5:18 PM

    Glenn,

    Your appointment for your EMG has been rescheduled for Friday,
    September 19th at 11 am with Dr. Varghese. We are still attempting to
    move that appointment up. If an appointment opens up sooner then I will
    contact you with the information.

    Jeanne Meier

    **From:** G Rag [mailto:glennkc50@yahoo.com]
    **Sent:** Monday, September 08, 2008 3:04 PM
    **To:** MEIER JEANNE (NEB5JMM)
    **Subject:** Re: Gallagher Intervention-Check Issue Problem

Jeanne,
I greatly appreciate that... and whats the problem on last week check.
Glenn Raglon, Sr

--- On **Mon, 9/8/08, jmeier@ups.com** *<jmeier@ups.com>* wrote:
From: jmeier@ups.com <jmeier@ups.com>
Subject: Gallagher Intervention-Check Issue Problem
To: glennkc50@yahoo.com
Date: Monday, September 8, 2008, 3:59 PM

Glenn, we are still attempting to get you rescheduled for your EMG.
I will personally call you, as will the doctors office, as soon as we have the appointment set up.
I will also follow-up with an email to you with the information.

Jeanne Meier

From: G Rag [mailto:glennkc50@yahoo.com]
Sent: Monday, September 08, 2008 2:43 PM
To: MEIER JEANNE (NEB5JMM)
Subject: Gallagher Intervention-Check Issue Problem


Jeanne,

I believe some form of retaliation is ongoing with claims examiner
at Gallaghers a check for the past week was not issued.
I'm requesting that you check into this issue.

As of this writing I have not received doctors
appointment for this week.

Glenn Raglon

---



www.mygbclaim.com

Thank you for visiting mygbclaim.com. Gallagher Bassett's newest information management tool that provides claimants and providers with direct, online access to check status and payment information 24 hours a day, 7 days a week.

Gain valuable information online anytime with mygbclaim.com. Stay tuned for further enhancements and functionality in the near future.

# Gallagher Bassett

ONLINE, REAL TIME ACCESS TO YOUR CLAIM BENEFIT PAYMENT INFO.

• Preferences    • Contact Us

## RAGLON SR, GLENN
## 011645-186946-WC-01 is being handled by:

| | |
|---|---|
| **Adjuster:** | SALGADO, KATHLEEN |
| **Branch City:** | SCHAUMBURG |
| **Branch Phone #:** | 847-273-3880 |

**Have a question about your claim?** Click here to ask.

### Records 1 To 9

| Payee Name | Check Date | Check Number | Status | Check Amount |
|---|---|---|---|---|
| RAGLON SR, GLENN | 07-Nov-2008 | 0067275715 | Cleared | 246.44 |
| Chk Msg: MILEAGE REIMBURSEMENT 8/18/08 - 9/30/08 | | | | |
| RAGLON SR, GLENN | 23-Oct-2008 | 0066947668 | Cleared | 108.88 |
| Chk Msg: MILEAGE REIMBURSEMENT 5/15/08 - 7/03/08 | | | | |
| RAGLON SR, GLENN | 30-Sep-2008 | 0066456122 | Cleared | 80.95 |
| Chk Msg: 5 DAYS TTD 9/26/08 - 9/30/08 | | | | |
| RAGLON SR, GLENN | 23-Sep-2008 | 0066305867 | Cleared | 453.32 |
| Chk Msg: TTD BENEFITS 8/29/08 - 9/25/08 | | | | |
| RAGLON SR, GLENN | 28-Aug-2008 | 0065791994 | Cleared | 113.33 |
| Chk Msg: ONE WEEK TTD 08/22/08 - 08/28/08 | | | | |
| RAGLON SR, GLENN | 21-Aug-2008 | 0065646280 | Cleared | 113.33 |
| Chk Msg: WAITING PERIOD 08/01/08 - 08/07/08 | | | | |
| RAGLON SR, GLENN | 21-Aug-2008 | 0065646281 | Cleared | 113.33 |
| Chk Msg: ONE WEEK TTD 08/15/08 - 08/21/08 | | | | |
| RAGLON SR, GLENN | 14-Aug-2008 | 0065496785 | Cleared | - 113.33 |
| Chk Msg: ONE WEEK TTD 08/08/08 - 08/14/08 | | | | |
| RAGLON SR, GLENN | 23-Jul-2008 | 0065040551 | Cleared | 10.44 |
| Chk Msg: REIMBURSEMENT | | | | |

Log Off



Copyright© 2001 Gallagher Bassett Services, Inc.

#2 6

**Certified Mail 7007 1490 0004 8913 9350**
**& 1st class US Mail**

January 12, 2009

United Parcel Service
Jeanne Meier
14650 Santa Fe Trail Drive
Lenexa, Kansas 66215

Subject:  ADA-American Disability Association Package
              Checks-Ongoing Discrimination

Dear Mrs. Meier,

Per our previous conversation during the month of September 2008, I was informed if I was
not able to perform the essential job functions, that UPS would offer me ADA package.
Based on recent data received, Dr. Toby provided modified duty and permanent restrictions on
October 30, 2008.

As of September 2008, the company has not kept its committment to provide ADA package.

1. My two previous payroll paychecks have not been received.

2. Four weeks & 3 days are past due for compensation checks- 10/01/08 thru 10/30/08.

I have enclosed medical documents from Dr. Toby to support my claim.I'm requesting that United
Parcel Service resolve these issues by *Friday, January 23, 2009.*

Sincerely,

Glenn E Raglon, Sr

cc: Teamsters Local 41
    Kansas Human Rights Commission

Enclosures: (2) Medical documents dated 10/30/08 from Dr. E. Bruce Toby

# 25

## Phone Conversation Notes with Glenn Raglon, Sr & Jeanne Meier- UPS District Case Mgmt Supervisor

**Glenn:** Good Afternoon Jeanne, its Glenn Raglon

**Jeanne:** Hi Glenn, how are you

**Glenn:** I'm good, how are you doing

**Jeanne:** Doing well

**Glenn:** I got the message to return your phone call

**Jeanne:** Yes Sir

**Glenn:** Well, I'm returning your phone call

**Jeanne:** Oh-Ok

**Jeanne:** Did you get the message from PMA to get your functional capacity exam schedule

**Glenn:** Oh yeah-I received that message

**Jeanne:** Oh-Ok did you call them

**Glenn:** No, here's where I have an issue Jeanne, I haven't received any workman's compensation checks for the past 4 weeks, I can't continue to miss my full time profession

**Glenn:** I really can't go until these issues are resolved

**Jeanne:** Ok

**Glenn:** And I would like for whomever in charge or who decided this decision  to rightfully fed-x my money due to me

I'm sure you can understand where I'm coming from, I'm not upset right now but it just bothers me, that someone has that much power in a claims representative to just cut somebody off because of a miscommunication with a doctors appointment, its never been an issue on my side other any other side .

I can say that Dr. Toby and I have never had a problem, it was just Terri Winslow and I'm always professional but I can't continue to go to doctors appointments when someone just cuts me off and doesn't ask for my version of what happen.

**Jeanne:** Let me tell you what I have read here, I got a note from the adjustor at Gallagher Bassett that your check for the amount of 453.32, has been made payable to you and was mailed to your attorneys office and this email is dated September 23 rd.

**Glenn:** Ok

**Jeanne:** So you will be able to get that picked up at your attorney's office.

**Glenn:** Ok-My question is I don't understand why she would mail it to my attorney's office when they have been coming here.

**Jeanne:** Typically what they do is that –she has been in contact with Linda at Keith Marks office, and actually that was at their request that we forward any checks and correspondence- because you have retained an attorney the adjustors are not able to have any contact with the employee and that's at the request of Keith Marks Office – that we do it that way

24

**Glenn:** Oh-Ok- Alright

Now what about the 217.00 that was submitted by my attorneys office two weeks ago that she basically tried to cheat me out of 108.00 dollars

**Jeanne:** What and I did speak with the adjustor on that- and I received the information regarding the mileage-she received that as well and based on map quest she re-calculated the correct mileage and re-issued reimbursement check for the correct mileage.

And I did have a note in here that she received that check back to their office, and I instructed her to please forward that to Keith Marks office as well when they send out your disability payment check.

**Glenn:** Ok-alright

**Jeanne:** That will be included with it as well and again they calculated mileage reimbursement based on point A to point B and she used map quest as a point of reference to calculate the correct mileage

**Glenn:** Ok

**Jeanne:** Again if they're an issue I would go ahead and speak with your attorney on that if you feel that is not correct

**Glenn:** Ok Alright well I'll get with them on that-Like I said I just can't continue to do this and not be compensated- *really this adjustor*

**Jeanne:** "Bottom line too Glenn our objective is to get you back to work as soon as possible, and based on the note I received from Dr. Toby and his visit with you. It that the reason why they want to do the function capacity exam is to determine if you can do the essential job functions-that functional capacity examination will tell that and I'm sure he Dr. Toby explained that much better than I can.

Is that if you pass the functional capacity exam than you will have your regular duty release and come back to work and again start receiving your normal compensation from UPS. And unfortunately if you're not able to do the functional capacity exam with the needed essential job functions that's needed for the job-obviously from a safety standpoint-if you can't meet those-than they would place permanent restrictions on you and at that point we would have to offer you ADA package-the American Disabilities Association if you're not able to come back to your job at UPS".

**Glenn:** Ok Alright

**Jeanne:** Does that all make sense to you.

**Glenn:** Yeah it all make sense one of the major issue I have is-that I'm getting all this laser and all these test done on my hand and it seems like a lot of over kill. Because I'm not sure what's going thru my hand with laser, radiation, ct scans, two shots

**Jeanne:** Unfortunately I'm not a nurse or a doctor and personally we have to rely on the professionals to obviously to give you the best –their intent care to make sure that we get you healed and well and are ultimately get you back to work.

**Glenn:** Alright

**Jeanne:** And that's what were doing as quickly as possible and that's why its critical and I know that we have exchanged voicemails back and forth trying to make sure that you know when your appointments are-and I know its tuff trying to schedule those but again we are trying to make sure that we get you back .

Trying to make sure 1st available appointments-our goal again is to make sure that we get you back at work here-so that you can receive your normal compensation realizing that while you're on workman's comp you're not getting reimbursed and not getting full pay.

**Glenn:** Sure-sure

**Jeanne:** While you're out really what we would like to do is- I would like for you to work on contacting PMA, and try to get you scheduled for the functional capacity exam either on Monday or Tuesday- and when you pass-we'll have you back to work with us on October 1st-and uh get you back to work with us.

**Glenn:** Alright I'll take a look-I appreciate your time Jeanne

**Jeanne:** Ok- is that alright Glenn that we try to get that schedule

**Glenn:** Well let me take a look and see if I'm going to be compensated-let me call the attorney office and then I'll go from there

**Jeanne:** Ok we'll just keep in touch then

**Glenn:** Thanks Jeanne

**Jeanne:** Thanks Glenn

## *END OF CONVERSATION*

# UPS Job Description



**Smalls Sort – General**

Essential Job Functions:

*Bend, stoop, climb, crouch, squat, stand, walk and turn/pivot intermittently for:

  Part-time: 3-5 hours per day, 5 days per week

  Full-time: 8+ hours, 5 days per week

*Report to work on a regular and timely basis and complete the scheduled workday on a consistent basis

*Ability to work varying shifts, additional hours and/or overtime depending on service needs

*Lift/lower, push/pull manipulate and carry containers weighing up to 70 pounds and packages weighing up to 10 pounds

*Grasp and maintain control of packages and containers

*Get packages at heights above the shoulder and lower packages and containers to foot level

*Read label and bag tag information

*Depending on location, may be required to clearly verbalize and/or key enter address label information, including use of computer and/or hand-held scanner

*Have a sufficient ability to communicate, through sight, hearing and/or otherwise, to perform assigned tasks and maintain proper job safety conditions

*Work in an environment with:

  Variable temperatures and humidity (climatic conditions)

  Exposure to dust, dirt and noises

  Narrow work areas and elevated heights

*Work cooperatively in a diverse work environment

#17

*Demonstrate cognitive ability to:

   Work independently with appropriate judgment

   Follow directions and routines

   Exhibit spatial awareness

   Read words and numbers

   Concentrate, memorize and recall

   Identify logical connections and determine sequence of response

   Process up to 2-3 steps ahead

*Perform other functions that may be assigned

 The essential functions of this job may vary greatly depending upon the size and location of the UPS facility.  At some locations, employees may not perform all of the essential job functions listed above.  At other locations, employees may perform some or all of the functions listed above and, in addition, may be required to perform other jobs or tasks as directed.  In addition, given the nature of the business, UPS retains the right to modify the essential functions of this position at any time.